Filed 1/27/21  P. v. Patterson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C089658 |
| Plaintiff and Respondent, | (Super. Ct. No. 17F0231) |
| v. | |
| ROBERT BLAKE PATTERSON, | |
| Defendant and Appellant. | |

A jury found defendant Robert Blake Patterson guilty of infliction of corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a)).[1]  The trial court sentenced him to a term of three years in state prison.  Additionally, the court imposed the mandatory court operations and conviction assessments and a restitution fine.  On appeal, defendant contends:  (1) insufficient evidence supports his conviction; and (2) the

----

[1] Further undesignated statutory references are to the Penal Code.

1

imposition of the court assessments and restitution fine violates his constitutional rights because there was no determination of his ability to pay them. We conclude substantial evidence supports the conviction and reject defendant's challenge to the mandatory court assessments and restitution fine. The judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a report of domestic violence against his wife, defendant was charged in count 1 with inflicting corporal injury upon a spouse (§ 273.5, subd. (a)), and in count 2 with making criminal threats (§ 422).

### A. *The Prosecution Case*

On the night of January 13, 2017, M.M. and defendant were at a restaurant when M.M. saw him chatting with another woman on his phone. She asked defendant about it, and he claimed he was just chatting with a friend. Defendant then grew angry and suddenly left the restaurant, leaving M.M. behind. M.M. followed him to their car. They stopped at a store on the way home. There, M.M. saw defendant ask another woman for her phone number. She asked him what he was doing, and he responded, "Fuck you, Bitch. I do whatever I want." M.M. returned to the car. Defendant then returned to the car and began pulling M.M.'s hair and striking her in the face. Defendant repeated, "I do whatever the fuck I want." He began driving but continued attempting to strike her, using his free hand to drive the car through red lights.

When they arrived at the house, defendant exited the car, opened M.M.'s door on the other side, and dragged her by her hair across the grass into the house. Once inside, he continued to strike and kick her, choked her, and threatened her life if she did not leave immediately. M.M. screamed when defendant kicked her in the ankle with such force that she thought it was broken. While defendant momentarily stopped to go outside, M.M. went upstairs twice to ask a housemate, C.C., to call 911. The second time, she was frenzied, "flailed herself" onto the end of C.C.'s bed, and she was having difficulty standing. C.C. saw that M.M. was "afraid, fearful, and needed and wanted the

2

police to arrive as quickly as possible." He told the 911 dispatcher, "It sounds like they got in a fight and he's being physically abusive, from what I've -- can hear." M.M. feared that defendant was going to kill her.

The investigating officer, Officer Jason Rhoads, found defendant in his car in a park. Defendant spontaneously asked Officer Rhoads "if his wife [was] pressing charges against him." Officer Rhoads later arrived at the house and observed M.M. in the back of an ambulance and later in a hospital emergency room. "She was extremely upset and sobbing." He observed and photographed M.M.'s injuries, including scratches on her neck, scratches and discoloration on her face, deep bruising on her right cheek, cuts on both her hands, a missing fingernail on one hand, and a bruised and swollen ankle. C.C. had not immediately observed injuries because the lights were off upstairs where he was sleeping, but he noticed that M.M. was favoring one leg after police arrived. The photographs further showed injuries to the inside of her mouth. Officer Rhoads testified, based on his involvement in approximately 200 domestic violence investigations, that injuries sustained in physical altercations are not always immediately apparent, including those to the face. A video recorded by M.M. after the assault showed damage to her right calf, an injury that did not appear in the photographs Officer Rhoads had taken.

After defendant was arrested, M.M. sent e-mails to the district attorney's office requesting that the charges against defendant be dropped. Further, she sent a notarized letter claiming that defendant did not inflict the ankle injury she suffered. However, at trial, she asserted that the letter and e-mails were coerced by defendant, who had called her every day and threatened to kill her if she did not withdraw the charges. M.M. bailed defendant out of jail because he possessed the only key to a storage unit in Houston, Texas, where all of her personal documents and belongings were located. She traveled with him to Houston so that she could retrieve them. On January 26, 2017, they were driving together in Houston when defendant grew angry and pulled M.M.'s hair while driving "really fast" and "skipping cars." A 911 caller told the dispatcher that he

3

witnessed M.M. attempt to escape defendant's moving vehicle while screaming, only to be forced back inside. A dash camera captured M.M. fleeing the vehicle once it came to a stop in the center median.

## B. The Defense Case

Defendant called one witness, Officer Justin Duval, who responded to the 911 call during the January 13 altercation. He testified that M.M. appeared "distraught, nearly hysterical" when he arrived.

## C. The Verdict and Sentencing

Following the trial, the jury found defendant guilty on count 1, but not guilty on count 2. The trial court sentenced defendant to the midterm of three years in state prison. The court assessed the following fines and fees: a restitution fine of $900 under section 1202.4, subdivision (b), a parole revocation fine of $900 under section 1202.45, a court operations assessment of $40 under section 1465.8, subdivision (a)(1), and a criminal conviction assessment of $30 under Government Code section 70373.

## DISCUSSION

## I

### *Sufficiency of the Evidence*

Defendant argues the evidence was insufficient to support his conviction for infliction of corporal injury on a spouse or cohabitant. In his view, because the jury acquitted defendant on count 2 and asked questions as to count 1 and the lesser included offenses as to that count, the jury did not find M.M.'s testimony credible. He contends that "[t]he scratches described by [O]fficer Rhoads are inconsistent with the victim's statements as to both the nature and severity of the assault by [defendant]." He argues that M.M.'s account of her ankle injury was not credible and her remaining injuries were not serious enough to constitute traumatic conditions under section 273.5. We disagree with defendant's view of the evidence and conclude that substantial evidence supports his conviction.

4

When determining whether there is substantial evidence to support a conviction, we view the record in the light most favorable to the People, resolving all conflicts in the evidence and drawing all reasonable inferences to support the conviction. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408.) " 'We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented.' " (*Ibid.*) We do not reweigh the evidence or substitute our judgment for that of the jury. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "In assessing the sufficiency of the evidence, we review the entire record to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. [Citation.] 'The record must disclose substantial evidence to support the verdict -- i.e., evidence that is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1039.)

To prove defendant was guilty of the corporal injury offense, the prosecutor had to show beyond a reasonable doubt that defendant willfully and unlawfully inflicted a physical injury on his spouse resulting in a traumatic condition and that he did not act in lawful self-defense. (§ 273.5, subd. (a); CALCRIM No. 840.) A " 'traumatic condition' " is defined as "a condition of the body, such as a wound, or external or internal injury . . . whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d); see also *People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952 ["It is inherent in the definition [of section 273.5, subdivision (d)] that both serious and *minor* injury is embraced—'*traumata* of *all* kinds' "].)

Viewing the evidence in the light most favorable to himself, and contrary to the governing standard of review, defendant argues insufficient evidence supports the jury's guilty verdict on count 1: "As to the injuries allegedly sustained by [M.M.] in the current case, perhaps the only of any significance is the injury to her ankle. The testimony,

5

however, does not support the conclusion [defendant] was responsible for the injury. [C.C.] testified that [M.M.] ran up and down the stairs at least twice requesting him to call the police. He described her at the time as hysterical and that she was 'fla[il]ing' herself and thrashing about on the floor of his room." Defendant misstates this evidence. C.C. testified that the second time M.M. came upstairs, he observed that she was having difficulty standing and using the furniture and windowsill to pull herself up. C.C. also testified that he noticed that M.M. was favoring one leg. This testimony is consistent with M.M.'s testimony that defendant kicked her in the ankle with such force that she thought it was broken. It is also consistent with Officer Rhoads's observation of M.M.'s bruised and swollen ankle.

Defendant makes much of a declaration his counsel filed with the trial court stating that she overheard several jurors discussing the case after the verdict and that they did not find portions of M.M.'s testimony credible, including her claims regarding her ankle injury. The declaration asserts that these jurors claimed the jury reached its verdict based on injuries other than the ankle injury. This declaration was not filed in relation to any motion. The accuracy of the assertions in the declaration regarding the jury's thinking is entirely speculative. Even if we were to consider it and disregard the ankle injury as defendant urges, we note that M.M.'s remaining injuries are sufficient to support the verdict. Officer Rhoads observed and photographed M.M.'s injuries, which included scratches on her neck, scratches and discoloration on her face, deep bruising on her right cheek, cuts on both her hands, and a missing fingernail on one hand. These wounds alone were sufficient to constitute a " 'traumatic condition' " within the meaning of section 273.5, subdivision (d). (See also *People v. Gutierrez, supra*, 171 Cal.App.3d at pp. 951-952.)

When viewed in the light most favorable to the judgment, the evidence and reasonable inferences from the evidence presented at trial support the conviction. (*People v. Jones* (1990) 51 Cal.3d 294, 314 [it is the exclusive province of the jury to

6

determine the credibility of a witness and the truth or falsity of the facts on which that determination depends].)  As the jury was properly instructed, it alone judged the credibility or believability of witnesses (CALCRIM No. 226) and was tasked with resolving conflicts in the evidence by deciding which evidence to believe (CALCRIM No. 302).  That the jury resolved any conflicts in the evidence against defendant does not mean insufficient evidence supports the guilty verdict.  Accordingly, we reject defendant's claim.

## II

### *Imposition of Mandatory Court Assessments and Restitution Fine*

Defendant argues that the trial court's imposition of the restitution fine, corresponding parole revocation fine, and the court operations and conviction assessments violated his constitutional rights because the trial court did not determine his ability to pay before imposing them.  He asks this court for a remand so the trial court can conduct a hearing on his ability to pay each of these fines and assessments.  Defendant's argument relies primarily on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, which held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Id.* at p. 1164.)  The *Dueñas* court also held "that although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine."  (*Ibid*.)

The Attorney General responds by arguing this claim is forfeited by defendant's failure to raise the issue of his ability to pay in the trial court.[2]  Assuming, without deciding, defendant's challenges to these restitution fines and assessments have not been forfeited,[3] we conclude *Dueñas* was wrongly decided and therefore reject defendant's claim on that basis.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4.  (*Kopp,* at pp. 95-96.)

In the meantime, we join several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the restitution fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

---

[2]  The People also argue that defendant's claim with respect to the restitution fine does not implicate due process but rather, should be evaluated under the excessive fines clause and fails under that clause.  Defendant, however, does not raise an excessive fines claim and rejects this framework.  Accordingly, we need not reach claims defendant does not assert.

[3]  We decline to decide whether there was any forfeiture; even if there were, because defendant also now raises an ineffective assistance claim, we would exercise our discretion to address the issue on the merits.  (See *People v. Riel* (2000) 22 Cal.4th 1153, 1192.)

Having done so, we reject defendant's *Dueñas* challenge to the mandatory assessments and restitution fines.

## DISPOSITION

The judgment is affirmed.


                                        /s/
                                        HOCH, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
DUARTE, J.

9