Filed 3/26/26  P. v. Henriquez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>YONI ANTONIO HENRIQUEZ,<br>        Defendant and Appellant. | A172030<br><br>(Contra Costa County<br>Super. Ct. No. 02-23-01994) |

A jury convicted Yoni Antonio Henriquez of several counts of lewd acts on a child both under and over the age of 14, forcible rape of a child over 14, forcible rape of an adult, and sexual penetration by a foreign object based on years of sexual abuse of Jane Doe, his stepdaughter.  The trial court sentenced him to 68 years.  On appeal, he argues there is insufficient evidence to support his forcible rape and sexual penetration convictions, the court incorrectly instructed the jury regarding forcible rape committed by duress, and it inadequately responded to jury questions about duress during deliberations.  He further argues we must reverse two convictions for lewd and lascivious conduct because they impermissibly constitute multiple convictions based on alternative statements of the same offense.  We find insufficient evidence to support his conviction for sexual penetration and remand for resentencing, but we otherwise affirm.

1

## BACKGROUND

When Doe was approximately 13 or 14 years old, Henriquez — who was over 17 years older — tickled her and kissed her vagina over her clothing. He then said, " 'I'm so sorry for doing that. I won't do that.' " But he did it again once or twice more. When she was between 15 and 16 years old, Henriquez kissed her breasts and put his penis in her vagina. He ultimately had sexual intercourse with her twice when she was 15, five times when she was 16, five times when she was 17, and approximately four times when she was 18 — all at their home when her mother was away. He sent Doe various text messages that she interpreted as referencing sexual intercourse. She did not want to have intercourse with him on any occasion. After each time, Henriquez told her he was "truly sorry." But he warned her against disclosing the abuse because he would go to jail. She complied because she variously worried the family would separate, he would "get mad" if she refused, and he would refuse to buy her things that she wanted. He also told her that because he was her father and treated her well, she should have sex with him.

In December 2023, Doe went to the bathroom to brush her teeth. Henriquez walked in, placed her on top of him, and put his penis in her vagina. He physically restrained her with his body. She did not want to have intercourse with him, and it stopped only when her mother returned to the house and ran to the bathroom. She asked Doe to open the bathroom door. Doe responded, "He forced me to." Doe's mother called the police.

During a police interview, Doe revealed Henriquez had been having sexual intercourse with her for years. She noted that when she attempted to put her hands on Henriquez to stop, he simply grabbed her hands and put them on the side. When she told him to stop, he would hold her down. Every

2

time she said no, he would get mad. In general, he repeatedly asked her "are we gonna do it" — referring to sexual intercourse — "yes or no." She feared that rejecting him would make him mad, and he would not talk with her or protect her from her mother during arguments.

The Contra Costa County District Attorney charged Henriquez with lewd acts on a child under 14 years old (Pen. Code, § 288, subd. (a); counts 1-2, undesignated statutory references are to this code); forcible rape of a child victim over 14 years old, occurring on or between January 8, 2020 and January 7, 2021 (§ 261, subd. (a)(2); counts 3-4); lewd acts on a child 15 years old, occurring on or between January 8, 2020 and January 7, 2021 (§ 288, subd. (c)(1); counts 5-6); forcible rape of a child victim over 14 years old, on or between January 8, 2021 and January 7, 2022 (§ 261, subd. (a)(2); counts 7-9); forcible rape of a child victim over 14 years on or between January 8, 2022 and January 7, 2023 (§ 261, subd. (a)(2); counts 10-12); sexual penetration by foreign object (§ 289, subd. (a)(1)(A); count 13); forcible rape, occurring on or between January 8, 2023 and December 16, 2023 (§ 261, subd. (a)(2); counts 14-15); and forcible rape occurring on or about December 17, 2023 (§261, subd. (a)(2); count 16).

Doe's statements to the police officer after the December 2023 events were admitted as an excited utterance. But during the trial, she testified he never held her arms down, she never tried to physically resist or fight him when he wanted to have sex. And she testified that she only told him to stop once and could not recall his response.

A jury found Henriquez guilty of all counts. At sentencing, the trial court sentenced him to an aggregate term of 68 years — seven years for count three, the principal term (forcible rape of a child 14 years or older); seven consecutive seven-year sentences for the additional counts of forcible rape of

a child 14 years or older (counts 4 & 7-12); three consecutive three-year sentences for forcible rape of an adult (counts 14-16); a consecutive three-year term for sexual penetration (count 13); concurrent three-year terms for lewd acts of child under 14 years old (counts 1-2); and a stayed term of one year for each conviction of lewd acts on a child 15 years old (counts 5-6). Henriquez appealed.

## DISCUSSION

### I.

Henriquez contends there is insufficient evidence to support his forcible rape convictions. First, citing Doe's trial testimony, he maintains she voluntarily had sexual intercourse with him and lied to police during her interview to avoid punishment by her mother. Accordingly, there is insufficient evidence that he engaged in sexual intercourse with Doe by means of duress or force. Arguing in the alternative, he insists substantial evidence only supports his forcible rape conviction arising out of the December 2023 incident. Having reviewed the whole record in the light most favorable to the judgment, determining whether "it discloses substantial evidence—evidence which is reasonable, credible and of solid value" such that a jury could find Henriquez guilty beyond a reasonable doubt, we reject his various arguments. (*People v. Haynes* (1998) 61 Cal.App.4th 1282, 1291.)

Forcible rape is sexual intercourse against a person's will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2); *People v. Griffin* (2004) 33 Cal.4th 1015, 1022.) Duress is "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have

4

submitted." (§ 261, subd. (b)(1).) It is "measured by a purely objective standard," focusing "on the defendant's wrongful act, not the victim's response to it." (*People v. Soto* (2011) 51 Cal.4th 229, 246.) When assessing the existence of duress, the trier of fact considers the totality of the circumstances, including "age of the victim, and the victim's relationship to the defendant." (§ 261, subd. (b)(1); *People v. Mejia* (2007) 155 Cal.App.4th 86, 100.)

Substantial evidence established Henriquez used duress to accomplish each act of rape. He psychologically dominated Doe. (*People v. Veale* (2008) 160 Cal.App.4th 40, 49.) He raised her since she was one year old, and she identified him as her father despite the lack of any biological relationship. As her family member, he occupied a "position of authority" and dominance over her. (*Ibid.*) She was 13 years old when he began sexually assaulting her. The rapes — occurring on or between January 8, 2020 and December 17, 2023, when she was over 14 years old — always "occurred when they were alone at home." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1073 (*Thomas*); *People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*) ["a defendant's attempt to isolate the victim" can establish duress].) He reasoned with her that she was obligated to have sex with him because he was her father and treated her well. She was thus a "vulnerable, isolated child who was compelled to participate in sex acts in response to parental authority," not consent. (*Thomas*, at p. 1073.) He further threatened her with adverse consequences — that he, her stepfather, would go to jail — if she disclosed the sexual intercourse. And she also did not report the abuse because she feared breaking up her family. (*Cochran*, at p. 15.) "When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases." (*Thomas*, at pp. 1072–1073.)

5

Henriquez's attempts to minimize the existence of duress based on Doe's age at the time the abuse began — 13, rather than six or seven years old — is not well taken.  His exploitation of Doe was continuous, bolstering the existence of duress.  (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.)

Relying on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 and *People v. Hecker* (1990) 219 Cal.App.3d 1238 — both of which hold " ' "[p]sychological coercion' without more does not establish duress' " and requiring at a minimum " 'an implied threat of "force, violence, danger, hardship or retribution" ' " — Henriquez insists the evidence here failed to establish duress.  (*Espinoza*, at p. 1321 [citing *Hecker*, reversing forcible rape conviction where the victim was 12 years old with limited intellectual abilities]; *Hecker*, at pp. 1250–1251.)  His reliance is misplaced.  The same court that decided *Hecker* subsequently determined the language regarding duress was "overly broad."  (*Cochran*, *supra*, 103 Cal.App.4th at p. 15, disapproved on another ground by *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.)  It clarified that the "very nature of duress is psychological coercion." (*Cochran*, at p. 15.)  For that reason, a "threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent."  (*Ibid*.) Thus, nothing more was needed to establish duress here.  (*People v. Senior*, *supra*, 3 Cal.App.4th at p. 776 [rejecting *Hecker*'s language that evidence of fear is required].)  And in any event, the record establishes more.  In her statements to police, Doe explained that when she physically resisted Henriquez's attempts to have sexual intercourse with her, he physically dominated her by grabbing her hands and placing them by her side.  This

6

suggests "that greater physical resistance would be answered with greater physical force." (*Senior*, at p. 775.)

Henriquez's remaining arguments are meritless. First, he urges us to disregard Doe's statements made during her police interview as not credible. He instead asks us to accept her trial testimony that he did not restrain her and she did not fight back. This argument ignores the standard of review. We do not reevaluate the credibility of witnesses. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Doe's statements to police were admitted as excited utterances, and the jury was free to credit those statements rather than her trial testimony. Next, to the extent Henriquez suggests we must reverse his rape convictions because there was insufficient evidence to establish rape by force, we disagree. Reversal is only required if there is no applicable theory of guilt supported by substantial evidence. (*People v. Marks* (2003) 31 Cal.4th 197, 233.) A conviction for rape can be established by evidence of sexual intercourse against a person's will "by means of force" *or* duress, as is the case here. (§ 261, subd. (a)(2).)

Finally, we reject Henriquez's alternative argument that the evidence only supports one rape conviction based on the December 2023 events. Doe testified he had sexual intercourse with her twice when she was 15, five times when she was 16, five times when she was 17, and four times when she was 18. These incidents all occurred in her room while her mother was away. Testimony further established that she did not want to have sexual intercourse with him in any of those instances. By so testifying, Doe "outline[d] a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*People v. Jones* (1990) 51 Cal.3d 294, 314, 299–300

[in " 'resident child molester' " cases, "testimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim"].) Based on the entirety of the record, a reasonable jury could conclude Henriquez engaged in sexual intercourse with Doe by means of duress for his rape charges.

## II.

Henriquez contends we must reverse his rape convictions because the trial court incorrectly and inadequately responded to the jury's questions seeking clarification on the element of duress. Not so.

The trial court provided the jury with CALCRIM No. 1000 — the pattern instructions for rape defining duress as "a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise. When deciding whether the act was accomplished by duress, consider all the circumstances, including the woman's age and her relationship to the defendant." During deliberations, the jury asked, "Is the fear that the family . . . break up on behalf of the victim sufficient to meet the criteria for 'duress' as appl[ied] to possible rape charge"? In response, the court wrote: "Duress means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which she would not otherwise have performed, or acquiesce in an act which she would otherwise not have submitted." It continued: "The total circumstances, including but not limited to the age of the alleged victim, her relationship to the defendant, threats of harm to the victim, physically controlling the victim when the victim attempts to resist, and warning . . . the victim that revealing the perpetrator's conduct would

8

result in jeopardizing the safety of the victim or the victim's family are factors to consider in apprising the existence of the duress."

Later, the jury asked whether "duress [has] to result in physical harm/bodily injury." After a colloquy with the parties — during which Henriquez's counsel proposed simply referring the jury back to the CALCRIM No. 1000 definition of duress — the court reread that pattern instruction. It also included the following definition of duress: "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which she would not otherwise have performed or acquiesce in an act to which she otherwise would not have submitted." It reiterated, "The total circumstances, including, but not limited to, the age of the alleged victim, her relationship to the defendant, threats of harm to the victim, physical control — physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the perpetrator's conduct would result in jeopardizing the safety of the victim or the victim's family are factors to consider in appraising the existence of the duress."

First, Henriquez argues the final phrase in the trial court's response — that the jury could consider "warnings to the victim that revealing the perpetrator's conduct would result in jeopardizing the safety of the victim or the victim's family" — when assessing the existence of duress is incorrect. Courts have a sua sponte duty to instruct juries on the essential elements of the charged offense. (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) We independently review claims of instructional error. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) After considering the instructions as a whole to determine whether there is a reasonable likelihood the jury misapplied the law, we discern no error. (*Ibid.*)

"[W]arnings to the victim that revealing the molestation would result in jeopardizing the family" is one of the circumstances a jury may consider

when deciding whether sexual intercourse was accomplished by duress. (*Thomas*, *supra*, 15 Cal.App.5th at p. 1072.)  As before, we reject Henriquez's argument — relying on *People v. Espinoza*, *supra*, 95 Cal.App.4th 1287, and *People v. Hecker*, *supra*, 219 Cal.App.3d 1238 — that such warnings are not indicative of duress.  Threats of adverse consequences, such as breaking up the family "if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution" sufficient to establish duress.  (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.)  The "fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress." (*Thomas*, at p. 1072.)  As here, duress may be supported in part by defendant telling the victim "not to tell anyone because he would get in trouble and could go to jail." (*Cochran*, at p. 15.)

Moreover, nothing in the trial court's instructions authorized the jury to find duress based solely on the existence of these warnings, as Henriquez insists.  Rather, the instructions expressly required considering the totality of the circumstances, followed by a nonexhaustive list of facts such as the victim's age and relationship to the perpetrator, *including* warnings to the victim that revealing the perpetrator's conduct would result in jeopardizing the safety of the victim or the victim's family.  Here, where Henriquez, as Doe's stepfather, began sexually assaulting her when she was approximately 13 years old, engaged in sexual intercourse with her when she was 15 years old in their house while Doe's mother was out, and warned Doe not to tell anyone about the abuse because he would go to jail, giving the jury this instruction was proper.

Second, we reject Henriquez's challenge to the adequacy of the trial court's responses to the jury.  Specifically, he contends the court should have responded "no" to the jury's two questions — whether Doe's fear that the

family would break up established duress, and whether duress had to result in physical harm or bodily injury. Henriquez forfeited this claim by failing to request this specific response and instead requesting the jury be referred to CALCRIM No. 1000. (*People v. Lang* (1989) 49 Cal.3d 991, 1024 [a party forfeits a claim "that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying" language].) This failure precludes Henriquez from raising this claim now.

Moreover, we acknowledge courts must provide information on any point of law arising in the case during jury deliberations. (§ 1138; *People v. Hodges* (2013) 213 Cal.App.4th 531, 539.) The original instructions here were " 'themselves full and complete,' " thus the trial court had " 'discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information.' " (*Hodges*, at p. 539; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1330–1331 [abuse of discretion standard of review for errors under § 1138].) The court did not "figuratively throw up its hands and tell the jury it cannot help" in response to the jury inquiry about duress. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) Instead, it satisfied its obligation by referring the jury back to CALCRIM No. 1000, supported by additional, correct language regarding duress. (*Beardslee*, at p. 97 [courts satisfy obligation to respond to jury by considering "how it can best aid the jury," including referring the jury back to the specific instructions].)

12

Henriquez contends he could not be convicted of both lewd acts on a child (§ 288, subd. (c)(1), counts 5-6) based on the same conduct supporting his rape convictions (§ 261, subd. (a)(2), counts 3-4). According to him, section 954 prohibits the convictions because they are simply different statements of the same offense. He points to the prosecution's sentencing brief, conceding counts five and six cover the same acts under counts three and four, and requesting the trial court stay the sentences for counts five and six. We independently review this issue of whether multiple convictions are proper under section 954 and disagree. (*People v. Rodriguez* (2021) 71 Cal.App.5th 921, 936.)

As relevant here, section 954 "concerns the propriety of multiple convictions." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.) It provides in relevant part, an "accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts." (§ 954.) Nothing requires the prosecution "to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged." (*Ibid.*) Critically, the "same act can support multiple charges and multiple convictions." (*Gonzalez*, at p. 537.) Indeed, multiple "convictions can be based upon a single criminal act or an indivisible course of criminal conduct." (*People v. Benavides* (2005) 35 Cal.4th 69, 97 (*Benavides*).) This is proper unless "one offense is necessarily included in the other." (*Ibid.*) But section 954 " 'does not permit multiple convictions for a *different statement of the same offense* when it is based on the same act or course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650, italics

13

added.)  Whether statutory provisions "define different offenses or merely describe different ways of committing the same offense" turns "on the Legislature's intent in enacting these provisions."  (*Gonzalez*, at p. 537.)  If "the Legislature meant to define only one offense, we may not turn it into two."  (*Ibid.*)

Section 288 — lewd or lascivious acts involving children — and section 261 — forcible rape — define different offenses rather than describing different ways of committing the same offense.  Section 288 prohibits a person from "willfully and lewdly commit[ting] any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child . . . with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  (§ 288, subd. (a).)  Section 261 defines rape as "an act of sexual intercourse accomplished under any of the following circumstances," including "against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."  (§ 261, subd. (a)(2).)

"Lewd conduct with a child is not a necessarily included offense" of rape, which requires "only general intent."  (*Benavides*, *supra*, 35 Cal.4th at p. 97.)  "Lewd conduct with a child is a distinct crime that requires an act upon or with the body of a child," "with the specific intent to arouse, appeal to, or gratify the lust or passions or sexual desire of either the perpetrator or the child (§ 288), and can be proven by circumstantial evidence including the nature of the act itself."  (*Ibid.*)  Thus, section 288 does not require a specific *act*, such as sexual intercourse, as long as it is committed with the requisite intent.  Rape, in contrast, is an "inherently sexual act[]."  (*Benavides*, at p. 97.)  The two statutes do not constitute "different ways of describing

14

the behavior proscribed by those statutes." (*People v. Vidana, supra,* 1 Cal.5th at p. 649.)  Thus, Henriquez could be convicted of both rape and lewd conduct with a child based on a single act.  (*People v. Siko* (1988) 45 Cal.3d 820, 823.)  But in those circumstances, "he cannot be punished for both offenses; execution of the sentence for one of the offenses must be stayed," as was done here.  (*Ibid.*)

IV.

Henriquez contends there is insufficient evidence of "penetration" to support his conviction for sexual penetration by a foreign object.  On this point, we agree.

Sexual penetration "is the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  (§ 289, subd. (k)(1).) It does not require penetration of the vagina.  (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371.)  Contact with "genitalia inside the exterior of the labia majora constitutes 'sexual penetration' within the meaning of section 289."  (*Ibid.*)  A finger constitutes a "foreign object."  (*People v. Adams* (1993) 19 Cal.App.4th 412, 428, disapproved on other grounds in *People v. Chhoun* (2021) 11 Cal.5th 1, 38.)

Even considering the evidence in the light most favorable to the judgment, we find no evidence to support Henriquez's unlawful sexual penetration conviction.  (*People v. Haynes, supra,* 61 Cal.App.4th at p. 1291.) During her police interview, Doe stated, "when I wouldn't give him what he wanted, he would finger me sometimes."  She did not clarify the meaning of "finger."  These statements constitute "vague, euphemistic language," requiring followup questions to prove the required penetration.  (*People v.*

15

*Paz* (2017) 10 Cal.App.5th 1023, 1038.)  But officers did not ask any.  The officer's trial testimony that in her experience and training, "finger" meant "digitally penetrating someone with a finger in their vagina" did not clarify Doe's statements, contrary to the People's assertions.  Nothing indicates Doe ascribed the same meaning of the term "finger."  (Compare with *id*., at p. 1040 [*victim* statement the defendant " 'started having anal sex' " with her and that he moved " 'his body in and out' " of hers supported penetration finding].)

Taken together, this evidence does not constitute "precise and specific testimony to prove the required penetration beyond a reasonable doubt." (*People v. Paz, supra,* 10 Cal.App.5th at p. 1038; *People v. Jones, supra,* 51 Cal.3d at p. 316 [though a child sexual crime victim need not specify precise dates, times and circumstances, she must describe "the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct"], italics omitted.)  Indeed, Doe denied that Henriquez ever put his fingers inside of her vagina, nor did the prosecutor ask any questions regarding whether he made contact with "genitalia inside the exterior of the labia majora."  (*People v. Quintana, supra,* 89 Cal.App.4th at p. 1371.)

On this record, we must reverse the sexual penetration conviction. We strike his sentence for that count and remand for a full resentencing as to all counts " 'so the trial court can exercise its sentencing discretion in light of the changed circumstances.' "  (*People v. Buycks* (2018) 5 Cal.5th 857, 893 [trial courts have jurisdiction to modify every aspect of sentence on " 'the counts that were affirmed, including the term imposed as the principal term' "].)  In light of this conclusion, we do not address Henriquez's argument

challenging his sentence for a consecutive term on this count.  We also do not address his arguments regarding corrections to the abstract of judgment, which will be revised following resentencing.

## DISPOSITION

Henriquez's conviction for sexual penetration is reversed.  The matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

17

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.


A172030; *People v. Henriquez*