Filed 6/5/26  P. v. Cervantes CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>GILBERT JAMES CERVANTES,<br><br>  Defendant and Appellant. | F088790<br><br>(Super. Ct. No. F17901543)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Michael G. Idiart, Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Gilbert James Cervantes was found guilty by a jury of sodomy by force on a minor 14 years or older, lewd acts on a child under age 14, sodomy of a person under the age of 16, and four counts of lewd acts on a minor age 14 or 15. He was sentenced to 11 years in prison.

Appellant now appeals, asserting: (I) insufficient evidence exists on the force element of the sodomy by force count; (II) insufficient evidence of penetration exists to support two counts of sodomy; (III) the trial court erred in failing to give a pinpoint instruction on penetration, and counsel was ineffective in failing to request one; (IV) the trial court abused its discretion in allowing expert testimony on "child sexual abuse accommodation syndrome" (CSAAS), and the jury instruction on CSAAS improperly bolstered the victim's credibility and violated appellant's right to due process and a fair trial; and (V) cumulative error. The People disagree.

We affirm.

## PROCEDURAL HISTORY

On November 2, 2023, the Fresno County District Attorney filed a first amended information charging appellant with one count of a lewd act on a child under age 14 (Pen. Code, § 288, subd. (a), count 1);[1] four counts of a lewd act on a minor age 14 or 15 (§ 288, subd. (c)(1), counts 2, 3, 4, and 6); sodomy by use of force on a minor 14 years or older (§ 286, subd. (c)(2)(C), count 5); and sodomy of a person under the age of 16 (§ 286, subd. (b)(2), count 7). The first amended information alleged two aggravating factors under California Rules of Court, rule 4.421(a)(11)[2] [took advantage of position of trust] and (a)(3) [particularly vulnerable victim]).

---

[1]     All further undesignated statutory references are to the Penal Code unless otherwise stated.

[2]     All further undesignated rules references are to the California Rules of Court unless otherwise stated.

2.

On January 24, 2024, the jury found appellant guilty on all counts. After appellant waived a jury trial on circumstances in aggravation, the trial court found true that appellant took advantage of a position of trust but found not true that the victim was particularly vulnerable. On October 11, 2024, the court sentenced appellant to an aggregate term of 11 years, consisting of the middle term of nine years for count 5 and a consecutive two-year term (one-third the midterm) for count 1; appellant received concurrent two-year terms on the remaining counts.

Appellant filed a notice of appeal on October 11, 2024.

## **FACTUAL SUMMARY**[3]

In 2008, appellant and his then wife became guardians of R.G. (born September 2001), and R.G. lived with the two in Reedley from the ages of 7 to 15. R.G. looked up to and trusted appellant, who took care of her and provided everything she needed.

R.G. testified that around age 12 or 13, she would awaken at night to find appellant standing over the bed staring at her. At that time, appellant merely told her to go back to sleep, which she would do. When R.G. was 13 or 14, the incidents progressed to appellant sitting on the bed and touching her back and legs. R.G. testified she was initially unconcerned, as she worked out and got sore muscles, which appellant would massage. Sometime during this time, the incidents progressed further, to appellant rubbing her breasts, buttocks, and vagina, first over her clothing and then under her clothing. R.G. testified she was half asleep during the incidents and did not understand what was going on at the time. R.G. did not recall how many times appellant touched her, either over or under her clothing, but she estimated it was over 50 times.

---

[3] Because two of appellant's challenges are to the sufficiency of the evidence, this factual summary is presented in a light most favorable to the judgment. (See *People v. Brooks* (2017) 3 Cal.5th 1, 57 (*Brooks*).)

3.

R.G. testified to two occasions where appellant performed "anal sex." The first occurred around the end of R.G.'s eighth grade year when she was 13 years old. R.G. testified that appellant came into her room at night, sat on her bed, and touched her breasts and vagina. He then pulled down R.G.'s shorts and penetrated her anus with his penis. R.G. could not recall if he moved his penis or just left it inserted. She recalled being on her period, remembered appellant brought napkins with him and took them when he left, and believed he ejaculated.

The second incident she testified to occurred in February 2017, when R.G. was 15 years old. The incident began as with the estimated 50 other times, with appellant coming into her room while R.G. was sleeping and massaging her legs and breasts under her clothing. Appellant then pulled down R.G.'s pajama shorts and removed his pants. R.G. recalled being on her stomach, leaning over the side of the bed with only the top half of her body on the bed and with appellant standing behind her. R.G. testified appellant inserted his penis into R.G.'s anus, which "hurt a lot." R.G. stated she told appellant "No" and tried to move away, but appellant said he was not done yet and pressed his body weight down on her, preventing her from moving away. R.G. did not know how long appellant's penis was in her anus but recalled that "it felt like forever." Afterward, R.G. went to the bathroom and saw that her anus was bleeding, and she testified she was sore and could not use the restroom for a few days afterwards.

During her eighth grade or freshman year, R.G. told one of her best friends about appellant's inappropriate touching. The friend recalled R.G. said appellant touched her vagina and tried to insert his penis into her buttocks. The friend testified she and R.G. talked about the touching over text messages as well. R.G. told her friend not to tell anyone, a promise the friend kept until after R.G. reported the incidents to the police. R.G. testified she told another friend around that time, but she had lost contact with him and could not recall his last name. R.G. testified she did not tell any adults, including the department of social services social worker with whom she had regular visits, because

4.

she did not want to be removed from her family and planned to tolerate the abuse until she turned 18.

In March 2017, during a high school softball retreat, R.G. told her coach that appellant had been sexually abusing her. During an icebreaker activity when one of R.G.'s teammates disclosed being sexually abused, R.G. began crying, and the coach brought her into a private room to talk. The coach testified that R.G. disclosed to her that appellant had molested her about twice a week over a two-year period starting roughly in 2015. The coach, a mandated reporter, called child protective services and took R.G. to the Reedley Police Department where R.G. reported the incidents.

Both R.G. and the coach were interviewed by law enforcement officer, Sergeant Martinez. The coach relayed to Martinez what R.G. told her and provided a written statement. R.G. told Martinez that, starting in the eighth grade, appellant would come into her bedroom at night, massage her over and under her clothing, rub her "groin area" and vagina, and perform "anal sex." R.G. told Martinez that in February 2017, appellant entered her room, began massaging her, then lowered her clothing and placed his penis on her butt and moved it up and down. R.G. relayed she tried to shift side to side to get away and would say, "No," but appellant continued his actions. R.G. gave a written statement to Martinez. R.G. also was interviewed by a forensic interviewer at the Multi-Disciplinary Interview Center, where she said appellant's " 'junk' " penetrated her anus on one occasion and caused her to bleed, and in February 2017 his penis went "inside the hole … a little bit." This interview was recorded, admitted into evidence, and played for the jury.

In addition to the above, the prosecutor solicited testimony from Dr. Jason Christopherson, who generally testified about child sexual abuse accommodation syndrome.

Appellant testified on his own behalf, denying all inappropriate allegations; he also relied on the testimony of his ex-wife and three other character witnesses.

5.

# DISCUSSION

## I.  Sufficiency of Evidence – Sodomy, Section 286, Subdivision (c)(2)(C).

Regarding his conviction on count 5, appellant contends the prosecutor only relied on evidence of the "first incident" of sodomy, when R.G. was in eighth grade, and this evidence does not show appellant used any force during that encounter.  Thus, he argues his conviction on this count is based solely on speculation and violates his constitutional right to due process.

The People argue, and we agree, that appellant reads the record too narrowly, as the nature of the charge and the supporting evidence shows count 5 concerns the incident in February 2017, where both force and duress were evidenced.

### A.  *Standard of Review*.

In considering a challenge to the sufficiency of the evidence, we " ' " ' "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Brooks*, *supra*, 3 Cal.5th at p. 57.)  We presume " ' "the existence of every fact the [jury] could reasonably deduce from the evidence." ' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.)  A conviction may be sustained by direct or circumstantial evidence (*People v. Kerley* (2018) 23 Cal.App.5th 513, 529), as well as the " 'uncorroborated testimony of a single witness … , unless the testimony is physically impossible or inherently improbable.' " (*People v. Panah* (2005) 35 Cal.4th 395, 489.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357).  On appeal, we do not reevaluate witness credibility or reweigh evidence.  (*People v. Brown* (2014) 59 Cal.4th 86, 106).  The appellant carries the burden to show the evidence was insufficient to sustain a conviction.  (*People v. Paredes* (2021) 61 Cal.App.5th 858, 863 (*Paredes*).)

**B.** *Analysis.*

To the extent appellant attempts to narrow the range of evidence supporting count 5 to the first act of sodomy by referencing the prosecutor's statements at closing arguments and the language used in the first amended information, we reject such a restrictive reading of the record. True, the language used in the complaint and the prosecutor's closing power point labeled the count as "sodomy by use of force on minor 14 years of age or older" with a date range between September 1, 2016, and January 1, 2017. (Capitalization omitted.) Also true, the prosecutor referred to "the first time" R.G. was sodomized in closing arguments. However, "[w]e do not measure the sufficiency of the evidence against the allegations of the [charging document]" but "against the penal statute." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 127.)

Count 5 charged appellant with violating section 286, subdivision (c)(2)(C), which prohibits "an act of sodomy with another person who is a minor 14 years of age or older when the act is accomplished against the victim's will by *means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person*." (Italics added.) The jury instruction used the same categories of means. Though R.G. estimated appellant molested her over 50 times in a two-year period, the evidence of sodomy presented at trial focused on two instances: one around the end of eighth grade when R.G. was 13 years old and one in February 2017 when she was 15. Given that R.G. was not "14 years of age or older" during the first instance and count 5 only reaches sodomy against minors 14 or older, it logically follows this count concerns the events in 2017 when R.G. was 15 years old. And while the prosecutor's comment at closing could be confusing if read in isolation, the prosecutor also made statements like: "[r]emember, per the [forensic interview, R.G.] said this event, the worst time and the first time, was sophomore in high school when the worst anal sex incident occurred." Thus, a review of the entire transcript demonstrates this count pertains to the events in

February 2017. (*Brooks*, *supra*, 3 Cal.5th at p. 57 [noting the court reviews the record as a whole when examining the sufficiency of the evidence].)

As to that instance in February 2017, the record contains evidence " ' " 'which is reasonable, credible, and of solid value' " ' " demonstrating appellant used force. (*Brooks*, *supra*, 3 Cal.5th at p. 57)  The jury was instructed that force for sodomy is shown "if a person uses enough physical force to overcome the other person's will." " '[A]n act is forcible if force facilitated the act rather than being merely incidental to the act.' " (*People v. Morales* (2018) 29 Cal.App.5th 471, 480.)  Juries are permitted to reasonably consider a victim's resistance in assessing whether the appellant used force to accomplish the act.  (*People v. Babcock* (1993) 14 Cal.App.4th 383, 387.)  R.G. testified that after appellant inserted his penis into her anus, which "hurt a lot," she told appellant, "No" and tried to move away but appellant continued, saying he was not done yet.  R.G. testified:  "[W]hen I would try to, like, leave, he would tell me no, and then he would put, like, more body weight on me to where, like, I couldn't get out or, like, move."  She also told the forensic interviewer in 2017 that appellant had his hands on her waist area and tightened his grip when she tried to move away, and he kept going despite her telling him repeatedly to "stop."  Thus, this conviction is not based on speculation, as appellant contends, but on R.G.'s testimony and other evidence that sufficiently supports a finding appellant used force in February 2017.  (*People v. Hale* (2012) 204 Cal.App.4th 961, 979 [noting that sodomy merely requires "enough physical force to overcome the victim's will"]; *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 [agreeing that "acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding of force].)

The record also contains reasonable, credible, and solid evidence demonstrating duress.  The jury was instructed that "*[d]uress* means a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or submit to something that she would not otherwise do or submit to."  We review duress on the

8.

" ' "total circumstances," ' " including the victim's age and relationship to the appellant, and appellant's " 'physically controlling the victim when the victim attempts to resist.' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) R.G. testified she was molested over 50 times in her own bedroom by appellant, who she thought of as her adoptive father. She told others that in February 2017, she told appellant "[n]o" and tried to move away, but appellant put more weight on her and tightened his grip on her waist so she could not get away until he was done. She testified she did not tell any adults because she did not want to be removed from her family and planned to tolerate the abuse until she turned 18. This evidence is sufficient to support acquiescence to the sodomy, i.e. duress, on count 5. (*Ibid.*; see also *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072–1073 ["When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases"].)

Appellant has not met his burden to show the evidence was insufficient to sustain a conviction on count 5. (*Paredes, supra,* 61 Cal.App.5th at p. 863.) Given this, appellant's constitutional rights were not abridged.

## II. Sufficiency of Evidence – Sodomy Penetration.

Appellant next contends insufficient evidence of a "precise and specific" nature exists to support a finding of penetration for two separate charges of sodomy (counts 5 and 7). He argues this issue violates his constitutional due process rights, contending at least one of the sodomy charges must be reversed. The People disagree, as do we.

### A. *Standard of Review.*

As with Appellant's first point on appeal, we review " ' " 'the whole record in the light most favorable to the judgment ….' " ' " (*Brooks*, *supra*, 3 Cal.5th at p. 57.)

### B. *Analysis.*

Appellant was charged with sodomy by use of force on a minor 14 years or older (§ 286, subd. (c)(2)(C), count 5), and sodomy of a person under the age of 16 (§ 286, subd. (b)(2), count 7). The jury was instructed that "[e]ach of the counts charged in this

9.

case is a separate crime," and they "must consider each count separately and return a separate verdict for each one." (See § 954.) The jury instructions defined sodomy as "any penetration, no matter how slight, of the anus of one person by the penis of another person." (See § 286, subd. (a).)

As one court has prominently stated, "sexual penetration requires penetration of the tissues that surround and encompass the lower border of the anal canal—that is, it requires penetration past the buttocks and into the perianal area but does not require penetration beyond the perianal folds or anal margin." (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1038 (*Paz*).) Despite this precise definition, this same court noted the medical field's inability to agree on anatomical labels for the area between the anus and the buttocks. (*Id*. at p. 1035.) Thus, when examining the sufficiency of the evidence regarding sodomy penetration, "courts are inclined to take a broad view of genital boundaries," minding our standard of review on appeal to review the whole record in the light most favorable to the judgment. (*Id.* at pp. 1037, 1039 [assessing the sufficiency of penetration evidence in light of "whether *any* rational trier of fact could have found the [appellant] guilty beyond a reasonable doubt"].)

As noted in part I.B. of the Discussion, *ante*, count 5 concerned appellant's act of sodomy when R.G. was 15 years old. (§ 286, subd. (c)(2)(C) [prohibiting sodomy by use of force on a minor 14 years or older].) R.G. testified that on a night in February 2017, appellant entered her room, stood behind her as she lay on her stomach leaning over the side of her bed, inserted his penis into R.G.'s anus, which "hurt a lot," and for what "felt like forever." Afterwards, R.G. testified she went to the bathroom and saw that her anus was bleeding, and she testified she was sore and could not use the restroom for a few days afterwards. R.G. also told the forensic interviewer that in February 2017, appellant's penis went "inside the hole … a little bit." This evidence is "precise and specific" enough to support a finding of penetration. (*Paz*, *supra*, 10 Cal.App.5th at p. 1040 [finding substantial evidence of penetration under section 286 based in part on

10.

the victim's testimony that appellant touched her body with his penis from behind, then "started having anal sex" with her, then moved "his body in and out" of hers].)

Count 7 charged appellant with sodomy of a person under the age of 16. (§ 286, subd. (b)(2).) R.G. testified to two incidents of appellant performing "anal sex." Given that each count concerns a separate crime (§ 954), and count 5 concerns the February 2017 incident, it logically flows that the jury's conviction on count 7 concerns the "first occasion" of sodomy occurring around the end of eighth grade when R.G. was 13 years old. Appellant again correctly notes the date ranges in the charging document and Power Point presentation regarding count 7 do not align with this reading, as count 7 is described as being based on events after count 5. However, as with the first point on appeal, the sufficiency of the evidence is measured against the penal statute. (*In re Michael D.*, *supra*, 100 Cal.App.4th at p. 127.)

Regarding the instance in the eighth grade, R.G. testified that appellant came into her room at night, sat on her bed and touched her breasts and vagina, pulled down her shorts and penetrated her anus with his penis. She stated he either moved his penis or just left it inserted, brought napkins with him and took them when he left, and (she believed) ejaculated. R.G.'s friend testified she recalled R.G. telling her appellant tried to insert his penis into her buttocks. Read in a light most favorable to the verdict, this evidence is also "precise and specific" enough to support a finding of penetration. (*Paz*, *supra*, 10 Cal.App.5th at p. 1040.)

Appellant contends the evidence was at times unclear, correctly noting inconsistencies in R.G.'s testimony and reports to her friend, softball coach, Sergeant Martinez, and the forensic interviewer. However, our standard of review requires we read " ' " 'the whole record in the light most favorable to the judgment ….' " ' " (*Brooks*, *supra*, 3 Cal.5th at p. 57), as well as presume " ' "the existence of every fact the [jury] could reasonably deduce from the evidence" ' " (*People v. Lee*, *supra*, 51 Cal.4th at p. 632). As to appellant's reliance on a Utah Court of Appeals decision (*State v. Pullman*

11.

(Utah Ct.App. 2013) 306 P.3d 827), this is not binding, and the court is otherwise unpersuaded.

Appellant has not met his burden to establish the evidence was insufficient to sustain two separate convictions of sodomy. (*Paredes, supra,* 61 Cal.App.5th at p. 863.) Given this, Appellant's constitutional rights were not abridged.

## III. Pinpoint Jury Instruction on Penetration Element for Sodomy Counts.

Related to his second point on appeal, appellant contends the trial court erred in failing to instruct the jury that, under *Paz,* sodomy requires a showing of penetration not just of the anus, but specifically "the tissues that surround and encompass the lower border of the anal canal—that is, … into the perianal area." (*Paz*, *supra*, 10 Cal.App.5th at p. 1038.) He argues the instructions as given could have allowed the jury to convict him of sodomy merely because his penis entered the space between R.G buttocks, and not fully into her anus. He also contends counsel was ineffective in failing to request such a pinpoint instruction.

The People respond that the issue is forfeited, and appellant's claim also fails on its merits. We agree with the People.

This claim is forfeited, as trial counsel failed to request this pinpoint instruction at trial. (*In re Stier* (2007) 152 Cal.App.4th 63, 74 [" '[F]orfeiture' [describes] the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court"].) Further, as we find such an instruction would have been confusing, we reject his argument that counsel provide ineffective assistance. (*Strickland v. Washington* (1984) 466 U.S. 668, 688–692 [ineffective assistance claims require asking whether counsel's acts "fell below an objective standard of reasonableness …"].)

### A. *Standard of Review.*

We review claims of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1217.) " 'Instructions should be interpreted, if possible, so as to support

12.

the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

**B.      *Analysis.***

Regarding counts 5 and 7, the jury was instructed that that sodomy was "any penetration, no matter how slight, of the anus of one person by the penis of another person." The trial court instructed the jury by using CALCRIM Nos. 1030 and 1091, which are consistent with section 286. "The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California." (Rule 2.1050(a).)

Appellant is correct that he " ' "has a right to an instruction that pinpoints the theory of the defense ...." ' " (*People v. Burney* (2009) 47 Cal.4th 203, 246.) "The court may, however, 'properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing ....' " (*Ibid.*) True, the Third District Court of Appeal has stated sodomy requires a showing of "penetration of the tissues that surround and encompass the lower border of the anal canal— that is, it requires penetration past the buttocks and into the perianal area but does not require penetration beyond the perianal folds or anal margin." (*Paz*, *supra*, 10 Cal.App.5th at p. 1038.) However, that same court noted "medical professionals cannot agree on what to call the areas between the rectum and the buttocks," "the 'perianal region is not well defined' " and " '[t]here exists no generally accepted definition of its outer limit.' " (*Id.* at p. 1035.) Given the potential for confusion in appellant's pinpoint instruction, we find the trial court would properly have excluded such language had it been requested. (*People v. Burney*, *supra*, 47 Cal.4th at p. 246.) Thus, we find defense counsel's performance was not objectively unreasonable. (*Strickland v. Washington*, *supra*, 466 U.S. at pp. 688–692.)

**IV.     CSAAS Testimony, Jury Instruction.**

In his fourth and fifth points on appeal, appellant contends the trial court abused its discretion by allowing Dr. Christopherson to testify about CSAAS because it is "junk science" and more prejudicial than probative. Appellant also contends the jury instruction on CSAAS improperly bolstered R.G.'s credibility. As to these arguments, appellant maintains the trial court violated his rights to due process and a fair trial.

The People disagree in all respects, as do we.

**A.     *Additional Background*.**

Prior to trial, appellant filed a motion in limine to exclude or limit the testimony of psychologist Dr. Christopherson, who would generally testify as an expert in CSAAS, as well as to omit CALCRIM No. 1193 regarding CSAAS. The court heard pretrial testimony from the doctor about his qualifications and anticipated discussion of CSAAS, then stated it would allow the testimony on a limited basis. The court noted the doctor "knows nothing about this case," "hasn't spoken to the victim," and would not be "giving any opinion as to the veracity of [R.G.] or whether [she] suffers from these things, and [the court will] be vigilant on any hypos that get into that too much." The court cautioned the doctor's testimony should be limited to his opinion that "some children who are abused would" exhibit behaviors conforming to the framework, but "not diagnosis," and noted defense counsel would be permitted to argue nonabused children exhibit the same behaviors.

At trial, defense counsel cross-examined R.G. as to her delayed reporting and failure to report the abuse at her regular visits with a social worker, her seemingly inconsistent statements about her memory of the abuse (including details that would sometimes swap between instances), her positive social media posts about appellant, and her substance abuse, behavioral issues, and instances of school and home discipline. Sergeant Martinez admitted on cross examination that R.G. never told him appellant's penis penetrated her anus but only placed it "on the butt," as well as that R.G. potentially

14.

told him there was one incident in which appellant penetrated her anus and one in which he did not. Defense counsel also cross-examined the coach and R.G.'s friend about inconsistencies in R.G.'s reports.

The prosecutor then called Dr. Christopherson to testify, who confirmed he knew nothing about the case other than appellant's name. Dr. Christopherson testified that CSAAS is an "organized representation of patterns of behavior" based on "secrecy, helplessness, entrapment or accommodation, delayed/unconvincing disclosures, and then retracted disclosures." Dr. Christopherson testified that children may keep sexual abuse secret because of a special relationship with the abuser like a family member, or because of a natural discomfort over speaking about sexual abuse. He testified that abused children exhibit helplessness due to the power imbalance with their abuser, especially when the perpetrator is a relative. He noted abused children will "accommodate the sexual abuse relationship for a long period of time" and "will often defend their abuser," all while expressing that the abusive situation is "something that they're not really going to be able to get out of." The doctor opined this could lead the child to engage in "dissociation," which can lead to memory lapses, disruptive behavioral problems, and longstanding psychological trauma. Finally, he discussed how sexual abuse can cause a child to delay disclosure, or disclose parts of the abuse over time, even over years. He stated the framework is merely meant to assist in understanding why children victims of sexual abuse behave as they do, agreed it should not be used to diagnose or determine if a child has been the victim of sexual abuse.

On cross examination, the doctor acknowledged the critiques of CSAAS, including that children who have not been abused can exhibit similar behaviors like acting out and substance abuse, as well as that CSAAS can lead to false allegations. Dr. Christopherson reaffirmed that he was not providing an opinion on whether R.G. had been sexually abused.

The court instructed the jury on CSAAS as follows:

> "You have heard testimony from Jason Christopherson, a psychologist, regarding child sexual abuse accommodation syndrome.

> "Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse.

> "Jason Christopherson's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.

> "You may consider this evidence only in deciding whether or not [R.G.'s] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

In closing arguments regarding Dr. Christopherson's testimony and the CSAAS instruction, the prosecutor contended that inconsistencies in R.G.'s testimony aligned with the CSAAS framework, reminded that the doctor knew nothing about the facts of the case, noted that the jury was to follow the CSAAS instruction as given and as approved under California law, and agreed that CSAAS was "not a formula to determine if [R.G.] was a sexually abused child" but merely "to help you as jurors understand her behaviors, understand the pattern of her behaviors."

Appellant asserted in his motion for new trial, among other things, the CSAAS jury instruction was in error because Dr. Christopherson's testimony was not helpful to the jury. The trial court denied appellant's motion in full.

**B.** *Standard of Review.*

We review a court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion. (*People v. Merriman* (2014) 60 Cal.4th 1, 74.) The same holds true for the admissibility of expert testimony. (*People v. Duong* (2020) 10 Cal.5th 36, 60.) A trial court may abuse its discretion when it acts in an arbitrary, capricious, or absurd manner that results in a miscarriage of justice. (*People v. Miles*

(2020) 9 Cal.5th 513, 587) " 'A merely debatable ruling cannot be deemed an abuse of discretion.' " (*People v. Johnson* (2022) 12 Cal.5th 544, 605.)  We review claims of instructional error de novo.  (*People v. Cole*, *supra*, 33 Cal.4th at p. 1217.)

### C. *Analysis*.

#### 1. Relevance of Dr. Christopherson's Testimony on CSAAS.

"No evidence is admissible except relevant evidence."  (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness … having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (*Id*., § 210.)

Expert CSAAS testimony is generally admissible to " 'disabuse jurors of [five] commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' "  (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1301 (*McAlpin*).)  CSAAS testimony may not be admitted to prove a complaining witness has been sexually abused.  (*People v. Bowker* (1988) 203 Cal.App.3d 385, 393 (*Bowker*).)  Neither may the expert opine about the veracity of a complaining witness.  (*People v. Lapenias (*2021) 67 Cal.App.5th 162, 176 (*Lapenias*).)  However, "[w]hen a victim's credibility is placed at issue due to 'paradoxical behavior, including a delay in reporting,' CSAAS testimony is admissible to disabuse a jury of misconceptions about how a child reacts to molestation."  (*People v. Flores* (2024) 101 Cal.App.5th 438, 456.)  Thus, "it is well established in California law CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse."  (*Lapenias*, at p. 171.)  Reviewing courts routinely hold that the admission of CSAAS evidence in compliance with the rules of evidence does not violate an appellant's due process rights.[4]  (See *ibid.* [collecting cases].)

---

[4]     We are not persuaded by appellant's citations to out-of-state authority for the proposition that CSAAS evidence is unreliable or an improper way to bolster the testimony of a child witness.  Numerous California courts have held that CSAAS

Here, Dr. Christopherson's testimony was relevant and admissible because the evidence demonstrated that R.G. exhibited four of the CSAAS behaviors. R.G. testified about her special relationship with appellant as her trusted guardian and caretaker; her positive social media posts about appellant, her accommodating appellant's molestation of her over 50 times between her eighth grade and sophomore year ; her plan to tolerate the abuse until she turned 18 so she would not be removed from the family home; her significant lapses in memory, especially about the details of the two incidents of sodomy; and her partial disclosures to her friends while delaying full disclosure years later. Correspondingly, Dr. Christopherson testified that a child may keep sexual abuse secret because the abuser is a family member or because of a natural discomfort over speaking about sexual abuse; may exhibit helplessness due to a power imbalance with their abuser, especially when the perpetrator is a relative; may accommodate the sexual abuse "for a long period of time" and "defend their abuser," all while expressing that the abusive situation is "something that they're not really going to be able to get out of"; may engage in "dissociation" and experience memory lapses, disruptive behavioral problems, and longstanding psychological trauma; and may lead to delayed or partial disclosure over time, even years.[5] The CSAAS evidence was sufficiently probative to be admissible. (Cf. *People v. Clotfelter* (2021) 65 Cal.App.5th 30, 64[admission of CSAAS testimony was error in the absence of evidence that the "victims delayed reporting or recanted" and where the victim's credibility was not questioned at trial].)

testimony is admissible. We follow *McAlpin* and its progeny and decline appellant's request to reexamine the issue.

[5] Though we focus here on portions of the doctor's testimony that ultimately aligned with R.G.'s testimony about the abuse, a review of the record demonstrates the doctor did not testify in a way that "as to allow the jury to apply the syndrome to the facts of the case and conclude the child was sexually abused." (*Bowker*, *supra*, 203 Cal.App.3d at p. 393.)

Further, appellant extensively attacked R.G.'s credibility and pointed out inconsistencies about R.G.'s reports when cross examining Sergeant Martinez, R.G.'s coach, and R.G.'s eighth grade friend. Dr. Christopherson's testimony was admissible to rehabilitate R.G.'s "credibility when the defendant suggests that the child's conduct after the incident--e.g., a delay in reporting--is inconsistent with his or her testimony claiming molestation." (*McAlpin*, *supra*, 53 Cal.3d at p. 1300.)

We reject appellant's argument that the probative value of Dr. Christopherson's testimony was outweighed by the risk of confusion. (See Evid. Code, § 352 [providing the trial court with discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will … create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury"].) The court heard the doctor's testimony in a pretrial proffer, which was substantially similar to what the jury heard, and so we cannot say the court's refusal to bar the doctor's testimony on CSAAS was arbitrary or capricious. (*Lapenias*, *supra*, 67 Cal.App.5th at p. 174 [" 'The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case' "].)

Appellant contends the doctor's testimony could have provided R.G. with an aura of reliability and trustworthiness. However, the jury in this case was instructed that it may consider CSAAS "only in deciding whether or not [R.G.'s] conduct was consistent with the conduct of someone who has been molested and in evaluating the believability of her testimony was 'offered only to explain certain behavior of an alleged victim of child sexual abuse,' and not as 'evidence that the defendant committed any of the crimes charged against him.' " As discussed below, this jury instruction was proper, and we presume followed by the jury. (See *People v. Cain* (1995) 10 Cal.4th 1, 34, 40.)

Finally, we reject appellant's arguments concerning the admissibility of this evidence as expert testimony. An expert witness may express opinions on any "subject that is sufficiently beyond common experience that the opinion of an expert would assist

the trier of fact." (Evid. Code, § 801, subd. (a); *People v. Valencia* (2021) 11 Cal.5th 818, 831.) It is settled that CSAAS evidence is not inadmissible under section 801 of the Evidence Code for the limited purpose of disabusing a jury of misconceptions about how a child reacts to molestation. (See *McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1301; see also *Lapenias*, *supra*, 67 Cal.App.5th at p. 173–174 [rejecting challenge to CSAAS expert testimony under the *Kelly* rule[6]]; *People v. Wells* (2004) 118 Cal.App.4th 179, 188; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744; *Bowker*, *supra*, 203 Cal.App.3d at pp. 393–394 [holding CSAAS could be used to "target[] a specific 'myth' or 'misconception' suggested by the evidence"].) For these reasons, we reject appellant's contentions that the court abused its discretion by admitting the CSAAS evidence via Dr. Christopherson's testimony, as well as that appellant's constitutional rights were violated. (See *Lapenias*, at pp. 174–176 [collecting cases].)

### 2. CSAAS Jury Instruction.

Appellant also contends the trial court erred by instructing the jury with the pattern CSAAS jury instruction. (CALCRIM No. 1193.) The People disagree, as do we.

In *Bowker*, the Fourth District discussed certain guidelines that should be used to tailor the evidence and instruct the jury regarding the limited use of CSAAS testimony. (*Bowker*, *supra*, 203 Cal.App.3d at p. 394.) This includes that:

> "[T]he jury must be instructed simply and directly that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true. The jurors must understand that CSAAS research approaches the issue from a perspective opposite to that of the jury. CSAAS *assumes* a molestation has occurred and seeks to describe and explain common reactions of children to the experience. [Citation.] The evidence is admissible *solely* for the purpose of showing that the

---

[6] "Formerly known as the *Kelly-Frye* rule, based on the rulings of *People v. Kelly* (1976) 17 Cal.3d 24 … and *Frye v. U.S.* (D.C. Cir. 1923) 293 F. 1013, the rule is now the *Kelly* rule in California after changes to the Federal Rules of Evidence that superseded *Frye*." (*People v. Nieves* (2021) 11 Cal.5th 404, 442, fn. 8.)

victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*Ibid.*)

The Judicial Council has approved CALCRIM No. 1193 to guide the jury in the use of CSAAS evidence. (Rule 2.1050(a).)

In light of these principles, and in the context of the instructions as a whole and the entire record, we find the court's use of CALCRIM No. 1193 to be proper and an accurate explanation of the law informing the jury as to the limited use of CSAAS evidence. We concur with those courts holding the official jury instruction accurately instructs the jury on the law: the proper use—and the proper limitations on the use—of CSAAS evidence. (See *Lapenias*, *supra*, 67 Cal.App.5th at pp. 175–176 [holding that CALCRIM No. 1193 accurately informs the jury on the proper use and the limitations on the use of CSAAS evidence]; *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503–504 [rejecting argument that it was "impossible" to use the CSAAS testimony to evaluate the believability of the victim's testimony without using it as proof that the appellant committed the charged crimes].)

As applied here, the jury was instructed the CSAAS evidence was "offered only to explain certain behavior of an alleged victim of child sexual abuse" and was "not evidence that the defendant committed any of the crimes charged against him." The jury was instructed it "may consider this evidence only in deciding whether or not [R.G.'s] conduct was consistent with the conduct of someone who has been molested and in evaluating the believability of her testimony," and that this evidence was offered only to explain certain behavior of an alleged victim of child sexual abuse. Dr. Christopherson's testimony and the prosecutor's arguments in closing align with the instruction as given. Thus, the trial court properly instructed the jury with CALCRIM No. 1193 and appellant's constitutional rights were not violated by the instruction. (*Lapenias*, *supra*, at p. 174; *People v. Ortiz* (2023) 96 Cal.App.5th 768, 816 [CALCRIM No. 1193 did not violate the appellant's constitutional rights].)

## V. Cumulative Error.

Appellant contends that even if the errors alleged above are not in themselves reversible, they are cumulatively prejudicial. Not so. "A predicate to a claim of cumulative error is a finding of error." (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1068.) Appellant's individual arguments fail on the merits. Thus, there is nothing to cumulate. As such, we reject appellant's claim of cumulative error resulting in prejudice. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:

SNAUFFER, J.

DESANTOS, J.

22.